IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNECIA S. GATES, individual, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.: 14-1291-NJR-PMF |
| WEBER CHEVROLET CO., ) ) | |
| Serve Registered Agent at: ) 12015 Olive Boulevard ) St. Louis, Missouri 63141 ) ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Unecia S. Gates through her counsel of record and for her Complaint against Defendant Weber Chevrolet Co. states:

### Parties, Jurisdiction and Venue

1. Plaintiff is an individual who resides in Belleville, Illinois.

2. Plaintiff brings this action on behalf of herself and all others similarly situated.

3. Defendant Weber Chevrolet Co. is a Missouri corporation in good standing.

4. Defendant operates automobile dealerships in Granite City, Illinois and Columbia, Illinois.

5. This Court has personal jurisdiction over Defendant because it has solicited business in the State of Illinois, conducts business in the State of Illinois,

has committed the acts described below in the State of Illinois and otherwise has sufficient minimum contacts with the State of Illinois.

6. This court as subject matter jurisdiction under 28 U.S.C. §1331 because Plaintiff's cause of action arises from Defendant's violations of the Telephone Consumer Protection Act 47 U.S.C. §227 *et seq*.

7. Venue is proper in this Court because a substantial portion of the events giving rise to the claims asserted in this Complaint occurred in the Southern District of Illinois.

## Background

8. Defendant is an automobile dealer with three locations in the St. Louis metropolitan area. These locations sell new and used vehicles and also include service and parts departments.

9. In February or March 2014 Plaintiff visited Defendant's Granite City, Illinois location because she was interested in purchasing an automobile.

10. Plaintiff did not purchase a vehicle from Defendant.

11. Defendant markets its products and services through a Short Messaging Service ("SMS").

12. SMS is a method of communication that sends text messages between cell phones or from a computer to a cell phone. The maximum size of an SMS text is 160 characters.

13. Unlike more conventional advertisements, SMS message advertisements can actually cost recipients money because wireless phone users must

pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

14. Plaintiff did not provide Defendant prior express written consent to send her text message communications. As used herein, the term "prior express written consent" means an agreement signed by the recipient containing a clear and conspicuous disclosure informing the recipient that he/she will receive text message advertisements from Defendant from an automatic telephone dialing system and informing her that she is not required to sign such an agreement or agree to enter such an agreement as a condition of purchasing any property or goods.

15. On or about July 1, 2014, Defendant or someone acting on its behalf sent the following text message at approximately 12:01 p.m. to Plaintiff:

> Weber Chevrolet reminds you it's time for your monthly tire pressure check. Stop in & we'll help you save gas, tires and more. Txt STOP 2 quit.

16. On August 1, 2014, Defendant or someone acting on its behalf sent the following text message at approximately 12:01 p.m. to Plaintiff:

> Weber Chevrolet reminds you it's time for your monthly tire pressure check. Stop in & we'll help you save gas, tires and more. Txt STOP 2 quit.

17. On September 1, 2014, Defendant or someone acting on its behalf sent the following text message at approximately 12:01 p.m. to Plaintiff:

> Weber Chevrolet reminds you it's time for your monthly tire pressure check. Stop in & we'll help you save gas, tires and more. Txt STOP 2 quit.

18. On November 1, 2014, Defendant or someone acting on its behalf sent the following text message at approximately 12:01 p.m. to Plaintiff:

> Weber Chevrolet reminds you it's time for your monthly tire pressure check. Stop in & we'll help you save gas, tires and more. Txt STOP 2 quit.

19. Plaintiff received and viewed the text messages referenced above on her cellular phone.

20. The text messages sent to Plaintiff and the putative class advertised goods or services sold by Defendant.

21. Upon information and belief, Defendant or an agent acting on its behalf sent text messages *en masse* to Plaintiff and member of the proposed class without prior express written consent.

### Count I – Violation of the TCPA, 47 U.S.C. § 227 *et seq.*

22. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this count.

23. The TCPA states, in part:

> It shall be unlawful ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a ... cellular telephone ... .
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver the message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1).

24. The TCPA defines "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4)

25. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity… to store or produce numbers to be called, using a sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

26. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services, which is transmitted to any person." 47 U.S.C. § 227 (a)(4).

27. The Federal Communications Commission's Regulations implementing the TCPA provide that telephone solicitations, which include text messages, cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

28. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

29. The Code of Federal Regulations further provides that the written agreement required to obtain "prior express written consent" must include a clear

5

and conspicuous disclosure informing the person signing that (1) by executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (2) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services. 47 C.F.R. § 64.1200(f)(8)(i)(A)-(B).

30. The TCPA provides for a private right of action and statutory damages of at least $500 per violation. 47 U.S.C. 227 §(b)(3).

31. Plaintiff brings this action pursuant to the provisions of Rule 23(b)(3) of the Federal Rules of Civil Procedure individually, and on behalf of a class defined as:

> All persons in the United States who, from October 16, 2013 to the present, were sent text messages by or on behalf of Weber Chevrolet and who did not sign an agreement containing the following disclosures: (1) by executing the agreement, such person authorized Weber Chevrolet to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (2) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

32. Upon information and belief, Defendant sent text messages to Plaintiff and the members of the proposed class using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

33. Upon information and belief, Defendant sent text messages to Plaintiff and the putative class members from a list of phone numbers and sent these messages without human intervention.

34. Upon information and belief, Defendant sent text messages nationwide and *en masse* via SMS from a short code to members of the proposed class despite not having prior express written consent from the class members to send them text messages. It would be impracticable for Defendant to send these text messages *en masse* without using the automatic telephone dialing system described in the previous paragraph.

35. More particularly, Defendant sent text messages advertising its goods and services for sale to Plaintiff and members of the proposed class who had not signed agreements with Defendant containing a clear and conspicuous disclosure informing them that (1) by executing the agreement, such person authorized Defendant to deliver or cause to be delivered telemarketing calls using an automatic telephone dialing system; and (2) the person was not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

36. By sending text messages to member of the proposed class who had not granted Defendant their prior express written consent by signing agreements containing the disclosures described above, Defendant violated the express provisions of the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) and (f)(8).

37. Defendant knew or should have known that the text messages sent to Plaintiff and members of the proposed class was a telephone solicitation and that

Plaintiff and members of the proposed class did not provide prior express written consent, as described above, authorizing Defendant to send them text messages.

38. Plaintiff and the proposed class are entitled to damages of $500.00 per text message sent by Defendant and up to $1,500.00 per text message if the Court finds that Defendant willfully violated the TCPA.

39. Upon information and belief, there are thousands of persons in the proposed class, and the class is so geographically diverse that joinder of all members is impracticable.

40. Plaintiff's claims are typical of the class she seeks to represent. Plaintiff and members of the proposed class were sent text messages by Defendant without providing their prior express written consent as defined by 47 C.F.R. § 64.1200(f)(8). Plaintiff's claims and the claims of the proposed class are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and members of the proposed class.

41. There are questions of law and fact common to the class. Common questions include:

    a. Whether Defendant sent text messages to members of the proposed class without obtaining their prior express written consent, including a signed agreement with the disclosures required by 47 C.F.R. § 64.1200(a)(2) and (f)(8);

    b. Whether Defendant sent text messages to members of the proposed class using an automatic telephone dialing system;

    c.      Whether the text messages sent by Defendant contain material encouraging the purchase its products or services;

    d.      Whether Defendant's conduct violates 47 U.S.C. § 227(b)(1)(A);

    e.      Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

    f.      Whether Plaintiff and the members of the proposed class are entitled to increased damages based on the willfulness of Defendant's conduct.

42. Plaintiff will fairly and adequately represent the proposed class members. Plaintiff has retained counsel experienced in the prosecution of class actions. Plaintiff is committed to vigorously prosecuting the claims presented in this complaint. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the absent class members.

43. The questions of law and fact common to the members of the proposed class predominate over any questions of fact affecting any individual member of the proposed class.

44. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it is impracticable and economically infeasible for class members to seek redress individually.

## Demand for Judgment

WHEREFORE Plaintiff Unecia S. Gates, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order, pursuant to Federal Rule of Civil Procedure 23(b)(3), certifying this action as a class action and appointing Plaintiff Unecia S. Gates as representative of the class;

b. Enter an order appointing Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Plaintiff and the proposed class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Defendant willfully violated the TCPA;

d. Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration; and,

e. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

Jury Trial Demanded

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: /s/   Christopher E. Roberts
David T. Butsch #6205434IL
Christopher E. Roberts #6302857IL
231 South Bemiston Ave., Suite 260
Clayton, MO 63105
(314) 863-5700 (telephone)
(314) 863-5711 (fax)
Butsch@ButschRoberts.com
Roberts@ButschRoberts.com

Attorneys for Plaintiff Unecia S. Gates